## Martin Kingman et al. v. County of Peoria.

1. COUNTIES—*Suits on Official Bonds of Officers May be Brought in the Name of.*—Under the provisions of Sec. 30, Ch. 34, R. S., it is proper to bring an action upon an official bond of a county officer in the name of the county.

2. INSTRUCTIONS—*As to the Approval of County Officers' Reports by the Board of Supervisors.*—In an action by a county against a county officer on his official bond, an instruction which states that the approval by the board of supervisors of his report is to be considered as evidence of a settlement, but not final or conclusive, and if the report was not true and accurate the county is not bound thereby, but entitled to have the same corrected, is proper, and should be given.

3. FEES AND SALARIES—*Liability of County Clerks on Their Official Bonds for Fees Received.*—It is immaterial from what source fees come into the hands of the county clerk; they are in the strictest sense earnings of his office, which he is obliged to report; and after deducting therefrom his salary, clerk hire and other expenses as fixed by the

county board, it is his duty to pay the balance into the county treasury, and a failure to do so is a breach of the conditions of his bond.

**Debt,** on county clerk's bond.   Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding.   Heard in this court at the April term, 1901.   Affirmed.   Opinion filed July 12, 1901.

ARTHUR KEITHLEY, attorney for appellants.

JACK & TICHENOR, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action brought in the Circuit Court of Peoria County upon the official bond of Charles A. Rudel, as county clerk of said county, to recover certain alleged shortages occurring through the administration of his office.   He was elected county clerk in November, 1898, for the term of four years, and gave the bond in question November 15th of that year.   It appears that he resigned early in 1900.   The declaration was in debt on the bond; Rudel defaulted and his bondsmen pleaded the general issue and *non est factum.* The case was tried before a jury which gave a verdict for appellee for the amount of the bonds to be discharged upon the payment of $1,096, damages and costs.   Judgment was given for the amount of the verdict and an appeal taken by the sureties on the bond.

Appellants say that "the most palpable error in this record consists of undertaking to maintain this suit by the county of Peoria in its own name, upon a bond running to the People of the State of Illinois."   The bond runs to the people, and appellants insist that the suit should have been brought in the name of the people and not in the name of the county.   That a suit upon a bond must ordinarily be brought in the name of the obligee is true, but cases like this are expressly provided for by statute.   Section 30, chapter 34 of the Revised Statutes (Hurd) provides :

"All notes, bonds, bills, contracts, covenants, agreements or writings made or to be made, whereby any person is or shall be bound to the People of the State of Illinois or to any county, or the inhabitants thereof, or to the county commissioners, county commissioners' court or county court,

or the board of supervisors, or to the governor or any other officer or person, in whatever form, for the payment of money, or any debt or duty, or the performance of any matter or thing to or for the use of any county, shall be as valid and effectual to all intents and purposes to vest in said county all the rights, interests and actions which would be vested in any individual, if any such contract had been made directly to him. Suits may be commenced, sued and prosecuted thereon in the name of said county, as is provided herein, or in the name of the officer or person to whom they are made, to the use of the county, as fully and effectually, to all intents and purposes, as any person may or can upon like notes, bills, bonds, contracts, agreements or writings made to him."

By virtue of this statute it was perfectly proper for the suit upon the bond in this case to have been brought in the name of the county.

Appellants also complain of the modification of one of the instructions offered by them. The instruction, as offered by appellants, was as follows:

"You are instructed that the defendants introduced in evidence a record of the proceedings of the board of supervisors approving the semi-annual reports of Charles A. Rudel at their meetings in June, 1899, December, 1899, and June, 1900, and that such action by the board of supervisors is presumed to be true and correct in law."

The court modified the instruction so that it told the jury that such action by the board of supervisors was proper to be considered as evidence of a settlement, but was not final or conclusive, and that if they found from the evidence that the same was not true and accurate, then the county was not bound thereby, but was entitled to have the same corrected. The instruction as modified by the court, stated the law correctly: If left as it originally appeared the instruction might have led the jury to believe that the act of the board in approving the reports of Rudel was conclusive as against the county. This is not true in law, and the county was entitled to have the inaccuracies, if any, corrected. Satterfield v. The People, 104 Ill. 448.

Appellants further claim that the verdict is not supported by the evidence. The items claimed by appellee and sub-

mitted to the jury, as shown by an instruction given for
appellants, were those designated in the bill of particulars
as "earnings of the office of the county clerk in the Sand-
meyer case, and in the street improvement cases and the
three county orders."

It appeared from the reports made by Rudel that he had
received three county orders, amounting to $6,533, and that
he had only accounted for $5,551, leaving a balance of $982
due upon the orders. It also appears that he had failed to
account for a certain amount received by him as clerk's fees
in certain street. improvement cases. Appellants say in
their brief, "the only satisfactory proof of any shortage
related to the clerk's fees for street improvement, amount-
ing to $114, and $4 clerk's costs in a common law case." The
$114 added to the amount of the shortage on the county
orders would just make the amount of the verdict of the
jury and judgment, leaving out the other item. But appel-
lants further claim that as to the clerk's fees for street
improvements, no recovery can be had upon this bond, the
theory being that such fees were not part of the income or
emoluments of the county clerk, but that they should be
accounted for by Rudel, if at all, as clerk of the county
court.

In the case of Satterfield v. The People, *supra*, however, it
was held in a suit upon the official bond of a county clerk,
that "it makes no difference from what source the fees of
his office come to his hands, whether ' probate fees ' or other
fees, they are in the strictest sense earnings of his office,
which he is obliged to report, and after deducting therefrom
his salary, clerk hire and other expenses, as fixed by the
county board, it is his duty, by law, to pay the balance of
such fees so received from any source, no matter what, into
the county treasury, and a failure so to do, is a breach of.
the conditions of his bond as county clerk. It is a failure
to perform his duties as such clerk as the same have been
prescribed by law. As clerk of the county court he owes
no duty to the county in this respect. It is as county clerk
he is to report the earnings of his office, and the balance,

·after deducting allowances made by the county board, he shall pay into the county treasury or to his successor in office." The item in regard to fees in the street improvement cases were therefore proper charges to be considered by the jury in this case.

We find no error in the record and the judgment of the court below is accordingly affirmed.